**ROWSON   v.   ROWSON et ux.**

No. 15497.

Court of Civil Appeals of Texas.

Fort Worth.

May 14, 1954.

Rehearing Denied June 11, 1954.

A. F. Rowson, of Dallas, Texas, brought suit as plaintiff in trespass to try title to certain real estate against defendants R. E. Rowson and his wife, residents of Denton County, Texas. The subject property of the suit included premises which had formerly belonged to the plaintiff, but which the defendants contended had passed to them. The defendants answered by a plea of not guilty, and by way of cross-action alleged that they had entered into a contract with the plaintiff in 1951 whereby they had agreed to exchange real estate, to-wit: plaintiff's property in Denton County on which the defendants lived, for defendants' property in Alamo, Texas. Defendants further alleged that pursuant to such agreement they had been in possession of plaintiff's property in Denton County since April of 1951 and had made permanent and valuable improvements thereon, that they had paid to plaintiff the sum of $1,465 as a part of the consideration for the Denton County property sued upon, and had tendered and did still tender the balance of the consideration that they were obliged under the contract to deliver to the plaintiff, to-wit: title by way of a warranty deed to their property at Alamo, Texas, upon simultaneous delivery to them of a deed to the property in Denton County. Their prayer was for specific performance and general relief upon the affirmative plea.

Following a jury trial judgment was entered upon the verdict and the court, after stating the opinion that judgment should be entered for the defendants upon their cross-action "upon their prayer for specific performance" and that the judgment should be fully effective as vesting respective titles to the lands described and set forth in the court's decree, decreed and vested title to the Denton County property in the defendants, and decreed and vested title to the Alamo, Texas property in the plaintiff. The court's description of the Denton County property in the judgment was taken from the description of the same as given in the plaintiff's original petition (and which is slightly different from the description of the property as it appears in the deed from J. Leonard Boyd to the plain-

---

Hopkins & Hopkins, George M. Hopkins, Jr., Denton, for appellant.

R. B. Gambill, John L. Sullivan, Denton, for appellees.

MASSEY, Chief Justice.

On April 2, 1954, we entered judgment reversing the judgment of the trial court and remanding the cause for another trial. After further study of the case on motion for rehearing, we have come to the conclusion that we were in error in so doing. The former opinion is hereby withdrawn and the following substituted therefor.

tiff) and the description of the Alamo, Texas property was taken from the abstract of title thereto which was introduced in evidence during the course of the trial.

A. F. Rowson perfected an appeal from the judgment to this court, and he is before us as the appellant. From our consideration of the record we are of the opinion that the judgment of the trial court should be affirmed.

It is clear from the evidence, viewed in complete disregard of the objections taken to its admissibility, that on and prior to date of March 31, 1951, the appellant owned certain real estate proximate to Lake Dallas in Denton County, Texas, upon which was located a "house" or "cottage" which was occupied as a dwelling by the appellees. Likewise, on and prior to said date the appellees owned certain estate in Alamo, Texas, (In Hidalgo County) on which was located appellees' house which they had rented to tenants. Both parties were familiar with the buildings located with respect to the real estate in the two places, whether or not they were acquainted with the boundaries of the real estate upon which the buildings were situated.

The real estate in Alamo, Texas, upon which the tenant house of the appellees was located was the only real estate owned by the appellees in Alamo or in Hidalgo County, and it was comprised of only one lot or part of a lot, as determinable by reference to the map, plat and deed records of Hidalgo County. The real estate in Denton County, Texas, according to the map, plat and deed records of Denton County, and according to the deed from J. Leonard Boyd to the appellant (stipulated by the parties in the course of the trial to have been the common source of title) was "all that certain lot, tract or parcel of land situated in Denton County, Texas, part of the Bartlett Eaves Survey, Abstract No. 388, and being *also parts of* Lots Six (6) and Seven (7) in Block 'B' of Franck's Addition No. 2, being a subdivision of a part of a 6.2 acre tract out of said survey a Plat of which said Addition is shown of record in Volume 1, Page 46, of the Plat Records of Denton

County, Texas, and more particularly described as follows: (here a description by metes and bounds follows)". (Emphasis ours.) This was the only real estate owned in Denton County by the appellant.

The plaintiff's original petition in trespass to try title, filed by the appellant when he instituted his suit, described the property as above except that in said petition the words *"also parts of"*, emphasized by us in the preceding paragraph, were deleted from the description of the property therein made. It has already been noted that the judgment of the trial court carried the property description exactly as the plaintiff's original petition described it rather than as the deed described it.

On March 31, 1951, the appellant wrote and mailed to the appellees the following letter:

"Rowson Clinic
"Dr. A. F. Rowson
"6621 Snider Plaza, Dallas 5, Texas
"Phone Lakeside 0668
"March 31, 1951

"Dear Dick:

"I have fully made up my mind to sell the Lake Cottage, as it has been a source of trouble and expense ever since you have been up there.

"Now I am either going to do one of the following three things by June 1st, and you can, and should be guided accordingly.

"(1) I will sell you the house and pay off the bank mortgage of $1,500 and I will accept as full payment for the cottage the $1,465 that I have of your hand money, plus a clear title to your house at Alamo if you accept this deal I'll stand to lose $6,500, but I am ready.

"(2) I will sell to a stranger for what ever the place will bring.

"(3) I will take possession of my Cottage June 1st and give you $1,465 the day you move out. I will also help you finance a new home. Now you

must accept one of the above plans by June 1st, if you remain silent I will assume that you are not interested in any of them and I will at that date contact a Denton Real Estate man and have him find a buyer and you can make a deal with the new owner.

" \* \* \*

/s/ "Allen"

The appellees promptly thereafter wrote to the appellant substantially as follows: "We accept your proposition. We are getting too old to be moving around."

Subsequently the appellees continued to reside in the "house" or "cottage" in Denton County. Appellee R. E. Rowson made a trip to Alamo, Texas, and caused his tenant to vacate the house there and returned to Denton County with a trailer-load of personal belongings he had gathered from the house at Alamo. He delivered his abstract of title to the Alamo property to the appellant, and appellant had it brought up to date. It appears that the Alamo house remained vacant after that time. It also appears that appellant kept the $1,465 mentioned in the letter of March 31, 1951. In the early part of 1952 appellant and appellee R. E. Rowson got into a controversy as to whether they had made a contract with one another which had operated or was operative to effect a swap of parcels of real estate. This culminated in the litigation between appellant and appellees.

We believe we are correct in stating that though the appellees' case on their cross-action was tried both upon the theory of completed transaction and as a suit for specific performance, it was submitted to the jury as though it was an action to compel specific performance. Not only did the judgment decree the transfer of title to real estate from appellant to appellees of the Denton County property it set out and described, but it also decreed the transfer of title to real estate from appellees to appellant of the Alamo, Texas, property set out and described.

The appellant objected to all the evidence introduced by the appellees in connection with the letters heretofore mentioned, and objected to all the extrinsic evidence introduced in explanation, clarification and description of the provisions of the letters, whether they related to the parties, subject matter or consideration of any transaction. The appellant raised the Statute of Frauds and by interposing it sought to avoid any obligation in respect to any contract for the sale or exchange of real estate, if indeed any contract had been made, which he denied.

The appeal presents questions involving whether any contract of any kind was made, and if so the kind, who were the parties to it, what was the subject matter and what was the consideration, as well as whether or not the entire contract or any part of it was inhibited by the Statute of Frauds.

The letter written from Dallas, Texas, and dated March 31, 1951, was written by an individual who called himself "Allen" to another individual whom he addressed as "Dick". In their ordinary and accepted sense one of the names is a common proper name given to persons, and the other is a common "nickname" given a person whose proper name is Richard. Extrinsic evidence was admissible to clarify and explain who the individuals were, and this evidence demonstrated without question that the letter was written by the appellant A. F. Rowson to the appellee R. E. Rowson, who was his brother.

The letter of March 31, 1951, contained what its writer doubtless considered to constitute three alternative propositions that he was tendering for the consideration of his brother. Examination and analysis of the letter clarify and demonstrate that actually the appellant made a proposition to his brother that they trade parcels of real estate, with an alternative proposition advanced in the event such brother would not deal in such respect. The alternative proposition so advanced was to the effect that such brother get off of the appellant's property by a certain date. Of course, the appellant at time he wrote the letter happened to have the amount of $1,465 which be-

longed to his brother. If the brother accepted the first proposition, then he would be agreeing to the retention (as his own) by appellant of the $1,465. If he did not so accept the first proposition then appellant agreed to pay his brother the $1,465 owed to him the day he moved off of appellant's property. In reply to one of the propositions posed by the letter the appellees delivered to the appellant a letter in which they stated, in substance, "We accept your proposition. We are getting too old to be moving around."

■■ In connection with the first proposition the Statute of Frauds would be necessary of consideration in relation to any transaction created by an acceptance. In connection with the alternative proposition the Statute would have no application. In any event it was one or other of the propositions to which the appellees wrote a letter stating "We accept your proposition". Appellees predicate their entire case upon the proposition that it was the first of the propositions which was accepted by them. A fact issue was made as to whether such proposition was the one accepted. In other words, there was a question as to whether the contract entered into by the two brothers was the exchange of real estate, plus $1,465 moving from appellees to appellant as part of the transaction. That being the question, if there was any ambiguity in the contract which would cast doubt upon whether such was the agreement, then oral testimony was admissible upon the fact issue as to whether that was the contract that the parties made. 10 Tex.Jur., p. 528, sec. 306; Arlington Heights Realty Co. v. Citizens' Ry. & Light Co., Tex.Civ.App., Amarillo, 1913, 160 S.W. 1109, 1121; Alstin's Ex'r v. Cundiff, 1880, 52 Tex. 453, 461. Such testimony was admitted, and by the jury's verdict it was established that there was an agreement made between the parties upon the first proposition posed by the letter of March 31st.

Besides the $1,465 which was to move as consideration from appellees to appellant pursuant to the contract, there was to likewise move as consideration some real estate designated in the letters constituting the contract only as appellee R. E. Rowson's "house at Alamo". The cash and the property at "Alamo" was the consideration in so far as the appellees were concerned, and the real estate they thought they were getting was the subject matter.

The consideration which was to move as such to the appellees pursuant to the contract was some real estate designated in the letters constituting the contract only as appellant's "house" or "cottage" which was at the time being occupied by the appellees. This property was the consideration in so far as the appellant was concerned, and his brother's "house at Alamo" and the $1,465 was the subject matter.

The most material attack leveled by the appellant upon the judgment which was entered is premised upon the inhibition of the contract by the Statute of Frauds because of an insufficient designation of the subject real estate to be sold or conveyed by either party. Appellant points out that he is sought to be bound in two different ways by the judgment, the first being the forcible divestment of his property in Denton County, Texas, and the second being the forcible investment of his brother's property at Alamo, Texas. He contends that the contract is voidable at his option because the divestment and investment are both inhibited by the Statute of Frauds, Vernon's Ann.Civ.St. art. 3995, and such being true as to either—then due to the nature of this contract the entire transaction is unenforceable. Appellant is correct in so far as we consider this case strictly from the standpoint of testing its sufficiency to compel the specific performance by the parties, if the requisites of the Statute of Frauds are not complied with by the writings of the two letters, the first dated March 31, 1951, and the second the reply to it.

A case material of consideration here is the case of Sanderson v. Sanderson, Tex. Civ.App., Eastland, 1935, 82 S.W.2d 1008, affirmed by the Commission of Appeals in 1937, 130 Tex. 264, 109 S.W.2d 744. There was a contract entered into by two women

wherein a woman named Kelton, who required constant care, contracted with a Mrs. Sanderson to nurse her and care for her for the rest of her life. In consideration of Mrs. Sanderson's promise Mrs. Kelton executed an instrument whereby she agreed "to give to Mrs. Sanderson to have and to hold forever the town house and all lots now owned * * * in Knox City * * *" and in further consideration she agreed with reference to her farm in Haskell County, Texas, "to give all income derived from her farm located in Haskell Co. to Mrs. Sanderson during the lifetime of Mrs. Sanderson, after the death of Mrs. Kelton". The trial court sustained exceptions to the pleadings in a suit by Mrs. Sanderson for the estate in the properties mentioned following the death of Mrs. Kelton, on the ground that the writing upon which the suit was founded was "too vague, uncertain and indefinite to be binding on the parties thereto". The plaintiff declined to amend, whereupon the trial court dismissed the case, and the action was appealed. The appellate court expressly stated that it did not appear material under the circumstances whether it regarded the petition as showing an action to try title, or for specific performance. It set out that the material inquiry for its determination was: "Does it (the writing) furnish the means whereby the lands may be located on the grounds?" The Commission of Appeals in writing upon the question held that the designation as to location of the house and lots in Knox City and the designation of the farm as located in Haskell County were sufficient. It held that the sufficiency as to description of the farm could not be determined by demurrer. It held further that if upon a trial the evidence established that Mrs. Kelton only had one farm in Haskell County then the description would be sufficient, but if on the contrary such evidence should establish that she had more, then the description would be insufficient and specific performance would not lie.

We also deem it important to consider the language of Chief Justice Stayton in the case of Smith v. Crosby, 1893, 86 Tex. 15, 23 S.W. 10, 40 Am.St.Rep. 818, discussing the character of cases dealing with description, location and identification of real estate in connection with the testing of sufficiency of contracts which purport to convey interests therein. He discusses certain cases wherein the holdings were that sales of undistinguished parcels of land out of larger tracts were void because there was no means of distinguishing the part sold from the remainder. He also discussed the case of Wilson v. Smith, 1878, 50 Tex. 365, where the levy upon and sale by a sheriff of certain property was held valid though it was on and of "one hundred and sixty acres of land, being a part of the homestead tract of said James Bankston, exclusive of two hundred acres exempt by law", because it was a sale of that part of a tract of 360 acres which remained after the homestead was laid off. He reasons that it is necessary for the law to condemn transactions purportedly conveying land where the land description is not given with sufficient particularity that it would be safe to apply extrinsic evidence to the description for the purpose of locating the land on the ground; that unless there be at least a general, though accurate, designation of the land by which the extrinsic evidence is controlled then extrinsic evidence might operate to convey property when there was no intention expressed by the written instruments to so convey such property.

In other words we believe that what Judge Stayton said in negative form could be said in positive form, as follows: "If by reference to the written words alone the subject property may be 'singled out' from all other property, and as so 'singled out' it may be located at a site or place, then the framework of the transaction as to subject matter is established without the aid of extrinsic evidence, and hence extrinsic evidence becomes admissible because it can with safety be applied for the purpose of locating the property on the ground".

Carrying our affirmative reasoning a step further, we believe that once the framework of the transaction is etablished as to

the subject matter as a part of the written contract, and that framework so established remain and persist and be not destroyed through any evidence, then the requisites of the Statute of Frauds are met and complied with, and extrinsic and parol evidence material and relevant to the transaction is properly received to furnish such aid as it can to the transaction.

Other cases which tend to support the principles recognized by these two authoritative decisions are: Pickett v. Bishop, 1949, 148 Tex. 207, 223 S.W.2d 222; Broaddus v. Grout, Tex.Sup., 1953, 258 S.W.2d 308; Morrison v. Dailey, Tex.Sup., 1887, 6 S.W. 426; Osborne v. Moore, Tex.Com. App., 1923, 112 Tex. 361, 247 S.W. 498; Continental Supply Co. v. Missouri, K. & T. Ry. Co. of Texas, Tex.Com.App., 1925, 268 S.W. 444; Miller v. Hodges, Tex.Com. App., 1924, 260 S.W. 168, citing 8 R.C.L. 1074 and 18 C.J. 277, 279 (26 C.J.S., Deeds, § 100); Porch v. Rooney, Tex.Civ.App., Galveston, 1925, 275 S.W. 494, writ refused. See also the case of Hermann v. Likens, 1897, 90 Tex. 448, 39 S.W. 282, 284, holding that "Without giving field notes or boundaries, or referring to other conveyances which contained such description, a tract of land may be so definitely pointed out that it may be unmistakably identified", and "Between the owner and his grantee, if from the facts given in the description in the deed the property intended to be conveyed can be identified with certainty, it is sufficient".

■ Application to this case of our analysis of the principles of law announced by Judge Stayton in the Smith v. Crosby case, supra, and which to our mind was applied by the Commission of Appeals in the Sanderson v. Sanderson case, supra, demonstrates to us that the transaction made by the parties' exchange of letters was for the conveyance of certain property in Denton County, Texas, which property was so sufficiently identified as a subject of conveyance that it could be located on the ground. That subject was the house (and necessarily by implication the *lot* on which

it was situated) which belonged to the appellant and which was occupied on date of March 31, 1951, by the appellees. Since such property was designated by a description which included the showing that the appellees were occupying the house on said date, and that it was property belonging to the appellant, the subject property could be "singled out" from all other property and as so "singled out" located at a site or place.

The appellees' "house at Alamo" could likewise be "singled out", and as so "singled out" located at a site or place. Of course the contract called for the delivery of a clear title to such property, and this would be incident to the transaction and material in a proper case but as applied to this case it is not. It is to be remembered that the appellant elected to go to trial with only a general denial to the cross-action of the appellees for specific performance, and he did not advance any affirmative defense subject or alternative to his general denial, as for example a plea of failure of consideration. Neither did the appellant desire nor seek any specific performance on the part of the appellees of their part of the contract, if and in the event they prevailed by their suit for specific performance. Of course, once it has been finally determined that the appellees have won their suit for specific performance, and appellant has suffered a corresponding loss, then appellant would be free to enforce a specific performance obligation against the appellees under the same contract in the event of their failure to perform as they were actually obliged to do by the terms thereof.

■ In the suit tried, however, there was no duty on the part of either appellant or appellees to establish as to the Alamo, Texas property the area of the land involved or its boundaries. Appellees' right to prosecute a cause of action for specific performance under the contract was established when they proved that the written instruments furnished the means whereby the Alamo, Texas lands may be located on

the grounds of that city, as well as the same thing with reference to the Denton County property. There was no requirement of appellees in the prosecution of their cause of action (right to prosecute the same having been established) that they actually locate the Alamo, Texas property on the grounds. They were required of course, as a part of their case on cross-action, to locate the Denton County "Lake Cottage" property on the grounds.

■ It is believed that locating the property on the grounds entails the establishment of its metes and bounds. By reference to the pleadings and the proof thereunder about the Denton County property we find that the "Lake Cottage" mentioned in the contract was located upon a lot, tract or parcel of land in the Bartlett Eaves Survey, and upon part of both Lot Six (6) and Lot Seven (7) in Block "B" of Franck's Addition No. 2, a subdivision of a part of a 6.2 acre tract out of the Survey, which Addition was platted and of record in the Plat Records of Denton County. The metes and bounds of said lot, tract or parcel of land were shown by the evidence to be: "Beginning at a point in the North boundary line of Lot 7 of Block 'B' of said Addition, one foot South 83 deg. 57 min. West of the Northeast corner of said lot; Thence South passing one foot West of the Southeast corner of said Lot 7, in all 135.8 feet to a corner; Thence West 65.9 feet to a corner in adjoining property line; Thence North with the East boundary line of adjoining property line, 130.8 feet a point for corner in the North boundary line of Lot 6 of Block 'B'; Thence North 83 deg. 57 min. East to the place of beginning." Thus it is ascertained that the "Lake Cottage" is located on a parcel of land 135.8 feet in length on its east side, and 130.8 on its west side, with the south side being 65.9 feet in length and length of the north side approximating the same number of feet.

With the size and boundary lines of the land on which the "Lake Cottage" is located so established, what remains to be established is whether the evidence adduced upon the trial, in addition to what we have set out as establishing the size and boundary lines of the land, further established that all of said tract or lot comprised real estate necessarily included as "Lake Cottage" property, or whether the real estate which would be necessarily included as the "Lake Cottage" property would only constitute a part of said land, and if so what part. After careful consideration we have reached the conclusion that all of the land was established as coincident with the "Lake Cottage" property, and as embracing it in its entirety. Wade v. Odle, 1899, 21 Tex.Civ.App. 656, 54 S.W. 786, error refused; 18 C.J., p. 296, sec. 274; 26 C.J.S., Deeds, § 106c, p. 390; 30 C.J., p. 472, House; 41 C.J.S., House, p. 364.

■ A description in a contract of sale or lease of a "dwelling" or "house" carries with it by necessary implication the real estate upon which the building is situated and so much of the surrounding real estate as is necessarily incident to the use of the premises as a dwelling. The building was shown to have been a good and substantial one and it had three bedrooms and two bath rooms. On the land also were several chicken houses, and the entire premises were surrounded by a Cox fence. This was established as the general condition of the premises at the time the contract in question was entered into by the parties. We believe that this constitutes some evidence that the entire premises as shown by the metes and bounds heretofore given were premises necessarily incident to the use of the premises as a dwelling place in a location where the "Lake Cottage" was situated. It is clear that it was not within the corporate limits of any town or city and was adapted to rural or semi-rural life. The parties to the litigation apparently treated the property as an entirety throughout the trial and tried the case on the theory that the true issue was whether there was any valid contract to convey any property. Appellant himself testified that the "Lake Cottage" as referred to in his letter heretofore set out was the only property he

owned in Denton County, that such property was the land in controversy in the suit, was the same property that was conveyed to him by J. L. Boyd, and was the same property that the appellees lived in at the time he wrote the letter in question.

■ All the special issues submitted by the court spoke of the property as the "Lake Cottage" property and no objection was taken and preserved on the appeal because of such use of the term. It is clear that the trial court interpreted the evidence as having established the metes and bounds of the lot, tract or parcel of land on which the "Lake Cottage" was located as the limitations of the realty coincidental with the term "Lake Cottage". Since that interpretation on the part of the trial court finds support in the record, the findings of the jury in response to the issues submitted will not be disturbed in the absence of any objection raised as to the form and manner in which they were submitted. 41-B Tex. Jur., p. 835, sec. 598. Since there was some evidence that the limitations of the term "Lake Cottage" were coincident to the limitations of the realty on which it was situated, and since the appellant did not complain of the submission of the special issues either before or after the charge was submitted and verdict returned on the ground of insufficiency of the evidence, he has waived any right to complain on that ground. 3-A Tex.Jur., p. 220, sec. 173, and p. 249, sec. 190.

[10] We therefore believe that in so far as the judgment decrees specific performance to the appellees in vesting title to the Denton County property in them the judgment is undoubtedly correct. In so far as the judgment deals with the Alamo, Texas property there might be some question, but so far as the appellees are concerned they are in position as confessors of judgment to such property, and in so far as the appellant is concerned he has not taken the position that he rejects such property in any event and whether or not the appellees are entitled to enforce specific performance with the Alamo property as consideration for such right. Therefore we do not see where the judgment would be inhibited irrespective of the question as to whether the Alamo property was properly located on the grounds.

The judgment is affirmed.

RENFRO, J., not participating.